FILED
IN CLERKS OFFICE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

2009 FEB -5  A II: 32

**THOMAS J. DOLAN,**

U.S. DISTRICT COURT
**CIVIL ACTION NO.** DISTRICT OF MASS.

**Plaintiff,**

**INJUNCTIVE RELIEF REQUESTED**
**V.**                                            **JURY TRIAL DEMANDED**

**THE CITY OF NEW BEDFORD;**

**THE NEW BEDFORD POLICE DEPARTMENT;**

**THE NEW BEDFORD FREE PUBLIC LIBRARY;**

**SHAWN P. McGUIRE,**
  **in his official capacity as a Police Officer of the**
  **New Bedford Police Department, and individually;**

**THERESA COISH,**
  **in her official capacity as the Director of the**
  **New Bedford Free Public Library, and individually; and**

**EILEEN MICHAUD,**
  **in her official capacity as a Reference Librarian of the**
  **New Bedford Free Public Library, and individually,**

**Defendants.**

_____/

## COMPLAINT

### Nature of the Action

1.   Under color of state criminal law, but without due process of federal constitutional

law, Defendants abridged, restrained, deprived, violated, and criminalized Plaintiff's First

and Fourteenth Amendment rights to read, write, and think freely in a public library.

2.   Defendants did so in retaliation for, and in prior restraint of, Plaintiff's exercise of

First and Fourteenth Amendment rights: to freedom of thought, of speech, and of the press;

and to petition the Government for a redress of grievances.

3.   Defendants did so with deliberate disregard for Plaintiff's constitutional rights.

4.   And Defendants did so by means of conspiracy; unlawful process; reprehensible conduct; threat of false arrest; intimidation; and coercion.

5.   Plaintiff claims compensatory and exemplary damages, together with injunctive and declaratory relief, plus an attorney-fee award, pursuant to 42 U.S.C. §§ 1983, 1988; 28 U.S.C. §§ 2201, 2202; and the Massachusetts Civil Rights Act, G. L. c. 12 §§ 11H, 11I.

### Jurisdiction and Venue

6.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4), 1367, 2201, 2202; and 42 U.S.C. § 1983.

7.   Venue is proper in this district pursuant to 28 U.S.C. § 1391.

### Parties

8.   Plaintiff Thomas J. Dolan ("Tom Dolan") is, and at times relevant to this action was, a citizen of the United States, residing in Bristol County, at 800 Pleasant Street, in the City of New Bedford, wherein the events giving rise to this action occurred.

9.   Defendant City of New Bedford (the "City") is, and at times relevant to this action was, a municipality in Bristol County, with its City Hall, City Solicitor's Office, and Mayor's Office located at 133 William Street, New Bedford, Massachusetts.

10.   Defendant New Bedford Police Department (the "Police") is, and at times relevant to this action was, the police department of the City, with its headquarters located at 871 Rockdale Avenue, New Bedford, Massachusetts.

11.   Defendant New Bedford Free Public Library (the "Library") is, and at times relevant to this action was, the public library of the City, with its main branch and Director's Office located at 613 Pleasant Street, New Bedford, Massachusetts.

12.    The Library's main branch (the "library"), is a Federal Depository Library required by 44 U.S.C. § 1911 to make its United States government publications, including United States Supreme Court opinions, available for the free use of the general public.

13.    Defendant Shawn P. McGuire ("Officer McGuire") is a citizen of the United States; residing in Bristol County; headquartered at 871 Rockdale Avenue, New Bedford; and, at times relevant to this action was and was acting as: the New Bedford Police Officer with final authority to write and file the Police Report that is subject matter of this action.

14.    Defendant Theresa Coish ("Director Coish") is a citizen of the United States; residing in Bristol County, at 28 Emery Street, New Bedford, Massachusetts; and at times relevant to this action was and was acting as: the New Bedford Library Director with final authority to execute and issue the Notice Not To Trespass that is subject matter of this action.

15.    Defendant Eileen Michaud ("Librarian Michaud") is a citizen of the United States; residing in Bristol County; on duty at the Library's main branch, 613 Pleasant Street, New Bedford; and at times relevant to this action was and was acting as: Reference Librarian.

16.    Except as otherwise alleged, Defendants' policies, practices, customs, usages, acts, and the like, were under color of law, and, where attributed to or alleged against any individual defendant, in his or her official capacity, the same is also attributed to and alleged against such individual defendant in his or her individual capacity, and vice versa.

### Facts Common to All Counts

17.    During the period January 2003 through February 2006, Plaintiff wrote, and then delivered to Defendants, a highly irregular series of "Liberty at the Library" letters, book reviews, orations, polemics, and petitions, some of which included criticisms and complaints about mismanagement and misconduct by Director Coish and by Librarian Michaud.

18.    On February 15, 2006, Plaintiff wrote, and then delivered to the Mayor of the City, one such "Liberty at the Library" letter: a stinging one-page polemic, in which Plaintiff sharply criticized the "Library Director" (Coish), in hyperbolic terms, for failing to enforce the Library's own constitutionally-valid ban on the use of cell phones in the library.

19.    A copy of Plaintiff's "Liberty at the Library" letter of February 15, 2006, cc: "Library Director," is annexed hereto as Exhibit "A."

20.    On February 24, 2006, Plaintiff wrote, and then delivered to City Hall official John T. Lobo, another such "Liberty at the Library" letter: this time, a more temperate one-page complaint that the "Reference Librarian" (Michaud) had interfered with Plaintiff's exercise of First Amendment rights to receive and transmit written information and ideas.

21.    A copy of Plaintiff's "Liberty at the Library" letter of February 24, 2006, cc: "Reference Librarian," is annexed hereto as Exhibit "B."

22.    On the following day, February 25, 2006, Librarian Michaud threatened to, and did, retaliate against Plaintiff for two classic exercises of First Amendment rights:

(a)  petition for redress of grievances ("letter") that Plaintiff had written to City Hall to complain about Librarian Michaud's interference with Plaintiff's First Amendment rights to receive and transmit written information and ideas; and

(b)  brief self-defensive word-choice ("language"), not directed at Michaud, but spontaneously uttered by Plaintiff upon being taken by surprise, from behind, by a man who suddenly stood at the back of the chair in which Plaintiff was seated; began speaking above and behind Plaintiff's head; read aloud, for all to hear, Plaintiff's private thoughts, which Plaintiff had put into words on the computer screen that Plaintiff alone sat facing; and, thus, invaded Plaintiff's privacy interests in an essentially intolerable manner.

4

23.  It is clearly established that Plaintiff's "letter" and "language" were fully protected, secured, and guaranteed by the First and Fourteenth Amendments to the Constitution of the United States, as interpreted, applied, and explained by the United States Supreme Court.

24.  It was the content of Plaintiff's brief self-defensive word-choice, that is, Plaintiff's "language," that Librarian Michaud "instructed [Plaintiff] not to use in the Library."

25.  The duration of Plaintiff's self-defensive word-choice, by contrast, was not objected to, nor was it objectionable, given its light and transient brevity of ten seconds or so.

26.  Nor did Plaintiff disrupt a quiet library. If anything, a library made noisy by disruptive patrons quieted down for a few moments after Plaintiff's brief self-defensive word-choice ("language").

27.  That all-too-brief quiet was broken by Librarian Michaud:

MICHAUD *(standing behind the Reference Desk, ten feet behind Plaintiff, who was seated, and remained seated, with his back to Librarian Michaud)*: Don't use that kind of language in the library, or we'll have to do something about it.

PLAINTIFF *(referring to his thinking and writing at the computer that he sat facing)*: I'm doing something about it already.

MICHAUD: Here, in the library, you're going to do something?

PLAINTIFF: I'm going to do things lawfully.

MICHAUD: Well then, stop bothering me!

PLAINTIFF: How am I bothering you?

MICHAUD *(waiving her copy of Plaintiff's "Liberty at the Library" letter to City Hall in the air, and then slamming it down on her desk)*: By writing me (sic) this letter!

PLAINTIFF *(calm as a clam)*: Perfectly legal.

5

MICHAUD *(pointing and wagging her finger at Plaintiff, and shrieking)*:
Well then, I'm going to do something perfectly legal to you!

PLAINTIFF *(exasperated)*: Go ahead.

28.    Librarian Michaud's retaliatory threats during that dialogue, followed by
Michaud's temper tantrum after that dialogue, were disruptive; and they were of longer
duration than Plaintiff's brief self-defensive word-choice ("language").

29.    Librarian Michaud carried out her retaliatory threats by making a hysterical and
histrionic phone call to Officer McGuire, who reported: "She stated she attempted to instruct
[Plaintiff] not to use that language in the Library but [Plaintiff] became very belligerent.
Mrs. Michaud stated she feels personally threatened by [Plaintiff's] behaviors and actions."

30.    But the physical evidence tells a different story. For, throughout Michaud's entire
ordeal, Plaintiff was seated, and he remained seated, with his back to Michaud, who stood
behind the formidable Reference Desk--ten feet behind Plaintiff's seated backside--from
which position of complete safety, Michaud shrieked (*at* Plaintiff's seated backside) her
threats to retaliate (*against* Plaintiff, *because of* Plaintiff's "letter" and "language"), which
retaliatory threats Plaintiff shrugged off by calmly saying "go ahead," in exasperation, as he
resumed writing at the computer at which he was seated.

31.    By "go ahead," Plaintiff meant go ahead, proceed lawfully--not go ahead, call the
police, and falsely accuse Plaintiff of belligerent behavior that threatened her personal safety.

32.    In any event, after getting off the phone with Michaud on February 25, 2006,
Officer McGuire did not ask to speak with Plaintiff. Nor did Officer McGuire come to see
Plaintiff at the Library, even though Plaintiff remained there for two more hours. Nor, in the
days ahead, did Officer McGuire seek out Plaintiff for a little talk. For, there was no need:

6

33.     Officer McGuire knew that the "emergency" Michaud tried to create over the telephone on February 25, 2006, was not actual but emotional; and that Plaintiff had not threatened Michaud's--or anybody else's--personal safety.

34.     So, it was not until two days later, on February 27, 2006, that Officer McGuire spoke with Plaintiff. Even then, Officer McGuire had not been looking for Plaintiff. Rather, it was Plaintiff who had gone looking for Officer McGuire, in order to speak with him.

35.     Plaintiff told Officer McGuire what happened in the library on February 25, 2006. And Plaintiff told Officer McGuire what happened in the library that very morning, February 27, 2006: Michaud had come over to Plaintiff and slapped the computer mouse next to him!

36.     Officer McGuire then told Plaintiff that he (McGuire) and Director Coish were fed up with Plaintiff's criticisms and complaints; that Plaintiff had been a "marked man" at the library; that Coish had been badgering the Police for months, if not years, to kick Plaintiff OUT of the library; and that Librarian Michaud's "emergency" phone call of February 25, 2006, to Officer McGuire, provided the opening that Director Coish had been looking for.

37.     Officer McGuire also told Plaintiff--and, thus, Plaintiff first learned on February 27, 2006--that Director Coish had accumulated, over time, a number of hidden accusations against Plaintiff, stored in secret reports, called "Library Incident Forms," wherein Library staff had reported Plaintiff, in writing, to Director Coish, who never informed Plaintiff of the contents, or even of the existence, of any such "Library Incident Forms"; nor was Plaintiff given timely and meaningful opportunity to give his side of the story, to defend himself, and/or to correct any misunderstandings or misbehaviors--whether on the part of Library staff, or on the part of Plaintiff.

38.     No matter what the "Library Incident Forms" might say, or not say, about Plaintiff,

7

Officer McGuire's account of them admits to: (a) secret surveillance, in violation of Plaintiff's privacy rights; and (b) secret, one-sided, non-neutral determination of facts decisive of Plaintiff's library-access rights, in violation of Plaintiff's due-process rights.

39.    Neither Officer McGuire, nor Director Coish, nor anybody else, had ever told Plaintiff anything at all about any "Library Incident Forms," until Officer McGuire informed Plaintiff of their existence on February 27, 2006.  Even then, Officer McGuire denied Plaintiff's request for a copy of the "Library Incident Forms."  To this day, Plaintiff has never been allowed to see a copy of any such "Library Incident Forms."

40.    And yet, such "Library Incident Forms" were referred to, and relied upon, in New Bedford Police Department Report 2006-03176 (the "Police Report"), which Officer McGuire filed on February 27, 2006, after speaking with Plaintiff.

41.    A copy of the Police Report is annexed hereto as Exhibit "C."

42.    On the cover pages of the Police Report, Officer McGuire knowingly, falsely, and deliberately stigmatized Plaintiff as a criminal "SUSPECT."

43.    Buried deep in the Narrative section of that same Police Report, however, Officer McGuire admits:  "I have reviewed a number of incident reports, letters written by [Plaintiff], and interviewed [Library] staff members, and nothing appeared to rise to the level of a criminal complaint."

44.    So, in lieu of a criminal complaint, Officer McGuire wrote up Plaintiff in the Police Report, wherein he (McGuire) found Plaintiff guilty--not of any crime--but of "behaviors and actions," "words and letters," and "complaints" that made people nervous, but broke no law.

45.    As he wrote the Police Report, Officer McGuire was driven by a need to justify, somehow, the Notice Not To Trespass at New Bedford Free Public Library Properties (the

"Notice Not To Trespass"), which would be executed and issued by Director Coish on the following day: February 28, 2006.

46.    A copy of the Notice Not To Trespass is annexed hereto as Exhibit "D."

47.    The Police Report concludes with two bottom-line justifications for the Notice Not To Trespass:

(1) McGuire and Coish were "unable to resolve [Plaintiff's] complaints"; and

(2) Library staff had "continued concern…about their safety and…patrons' safety."

48.    Bottom-line justification (1) is a flat-out admission that the Notice Not To Trespass is a retaliation against Plaintiff for having exercised his First Amendment right to complain.

49.    Bottom-line justification (2) is not so straightforward. A police officer's genuine "concern for safety" in an immediate situation calling for quick action may temporarily override a private citizen's constitutional rights. But this is no such case.

50.    As admitted in the Police Report, the "concern [for] safety" was not *experienced by* Officer McGuire. Rather, it was *expressed to* Officer McGuire by Library staff. Then, it was reported by Officer McGuire as a "*continued* concern." Then, such "continued concern" was used by Officer McGuire to support a quasi-judicial determination and decree that Plaintiff was and is a criminal suspect threatening to the personal safety of others.

51.    Such determination and decree was not by court order, nor by criminal process, nor by civil procedure, nor by due process of law, but by "meeting and agreement" between police officer (Officer McGuire) and public official (Director Coish): both of whom were predisposed to find and rule against Plaintiff.

52.    By their own terms, the Police Report and the Notice Not To Trespass show that, under color of state criminal law, but without due process of federal constitutional law,

9

Officer McGuire and Director Coish, officially, individually, and in concert, "met and agreed" (i.e., conspired) to and did:

(a) determine and declare Plaintiff to be, and punish him as, a criminal "SUSPECT" "threatening" to the "personal safety" of "others";

(b) sentence Plaintiff "effective immediately" to "absolute, unconditional, and continuing" banishment from each and every branch and bookmobile of the New Bedford Free Public Library;

(c) give the New Bedford Police Department "official notice," without court order, and in advance of trial, that Plaintiff "will be" guilty of a crime if he exercises his constitutional right to enter any city library, for any purpose, no matter how lawful; and

(d) threaten Plaintiff with false arrest, in prior restraint of Plaintiff's exercise of First and Fourteenth Amendment rights, freedoms, and liberties to be in, to use, to read, to write, and to think freely in the New Bedford Free Public Library, when open to the public.

53. Nowhere in the Police Report, or in the Notice Not To Trespass, is Plaintiff charged with violating any law or rule of the United States of America, or of the Commonwealth of Massachusetts, or of the City of New Bedford, or of the New Bedford Free Public Library.

54. The only law or rule mentioned in the Police Report is a state criminal statute-- Massachusetts General Laws, Chapter 272, section 53--which Plaintiff has never been charged with violating in the library, or in any other place.

55. The only law or rule mentioned in the Notice Not To Trespass is also a state criminal statute--Massachusetts General Laws, Chapter 266, section 120--which, as well, Plaintiff has never been charged with violating in the library, or in any other place.

56. Nor has Plaintiff ever been charged with violating any law or rule, whether

constitutionally valid or not, in the New Bedford Free Public Library, or in any other library.

57.   Nor has Plaintiff ever been given notice of any such charge.  For, no such charge was ever made.

58.   There being no charge, there could be no due process, and there was none.

59.   There being no charge, whatever Plaintiff is reported to have done, said, or written is immaterial; and all of the Police Report's allusions to accusations, allegations, expressions of concern, feelings of fright, hysterical phone calls, secret reports, documented hearsay, and the like, are beside the point: for, they establish no facts, and they follow no law.

60.   Instead, the Police Report shows Defendants lawlessly pursuing their own unlawful predilection that Plaintiff's being in the library, where he has a right to be, be made a crime.

61.   Under certain circumstances, not present in this case, Plaintiff's otherwise lawful presence in a public place for First Amendment purposes might be subject to prior restraint and criminalization--by court order subject to constitutional scrutiny and appellate review.

62.   The Notice Not To Trespass is such a prior restraint and criminalization.  But it is not a constitutional court order.  Rather, it is an unconstitutional city order that, by its own terms, "is effective immediately, is absolute and unconditional, and is to continue to be in force and effect, regardless" of Plaintiff's First and Fourteenth Amendment rights to read, write, and think freely in the library, when open to the public.

63.   There was no hearing--in the Due Process sense of that term--before or after the execution and issuance of the Notice Not To Trespass.

64.   Pre-deprivation, Plaintiff was not heard by a *neutral* fact-finder and decision-maker to determine what misconduct, if any, had actually been committed by Plaintiff; whether any such misconduct, if so found, substantiated the (non-existent) charge; and what resolution

would be reasonable, in context, and under the circumstances.

65.  Post-deprivation, there was no procedure by which Plaintiff might challenge, or appeal from, the Notice Not To Trespass.

66.  Instead, the Notice Not To Trespass was presented as final edict and *fait accompli.*

67.  Due process required, at minimum, a hearing OF Plaintiff by Director Coish, the final decision-maker who executed and issued the Notice Not To Trespass.

68.  No such hearing took place.

69.  Instead, Director Coish heard ABOUT Plaintiff from Officer McGuire, from Librarian Michaud, and from other Library staff--at closed proceedings for one-sided determination of facts decisive of Plaintiff's rights--without Plaintiff being notified, and without Plaintiff being allowed to hear and be heard.

70.  Due process also required that the fact-finder and decision-maker be neutral.

71.  But Director Coish was not neutral. Nor could she be neutral. For, she was predisposed to find and rule against Plaintiff.

72.  Officer McGuire was not neutral either. Nor could he be neutral. For, he too was predisposed to find and rule against Plaintiff.

73.  As admitted in the Police Report, Officer McGuire and Director Coish saw Plaintiff's "words and letters" and "complaints" as a "long-standing problem" that they were "unable to resolve."

74.  Rather than correct the problems about which Plaintiff complained, it would be simpler and easier for Officer McGuire and Director Coish to slap Plaintiff with a piece of paper (Notice Not To Trespass) that would make it a crime for Plaintiff to be in the library.

75.  So, that is what they decided to do.

12

76. On February 27, 2006, Plaintiff told Officer McGuire that he [Plaintiff] wanted "due process: notice and a hearing."

77. But the decision had already been made.

78. So, Officer McGuire did not hesitate. Nor did he miss a keystroke: "[Plaintiff] denied being threatening to staff. He stated he feels the staff threatens and harasses him.He stated they do not enforce library rules and this allows the library to be extremely disruptive. He stated staff harassed him when they moved a desk he liked,by limiting the use of a computer,that staff has yelled at him, and slammed a computer mouse near him.I informed [Plaintiff] that he would not be allowed back in the library and all library branches.That a written order was in the process of being issued and I would hand deliver[] it to him."

79. The "written order" referred to in the Police Report was not a constitutional court order but an unconstitutional city order--to wit, the Notice Not To Trespass.

80. When open to the public, the premises of The New Bedford Free Public library are a public place, and Plaintiff's right to be there cannot be taken away, without due process of law, as if those premises were purely private property, from which Plaintiff might be excluded, forthwith and forever, by Notice Not To Trespass.

81. The First and Fourteenth Amendments to the Constitution of the United States secure, protect, and guarantee Plaintiff's rights, freedoms, and liberties to enter and remain on the premises of the New Bedford Free Public Library, when open to the public; to read, write, and think freely there; to receive and transmit written information and ideas there; to petition the Government, in writing, for redress of grievances there; to choose his own words there; to defend the privacy of his own person and papers there; to mental freedom there; to intellectual liberty there; and to due process of law ("Plaintiff's constitutional rights").

13

82.   On March 1, 2006, Officer McGuire personally served upon Plaintiff the Notice Not To Trespass, which, on its face, violated and violates Plaintiff's constitutional rights.

83.   Also on March 1, 2006, Officer McGuire told Plaintiff about, and Plaintiff first learned of, the Police Report, a copy of which Plaintiff obtained and read that same day.

84.   Thus, March 1, 2006, was the earliest date on which Plaintiff could know, and did know, the respective contents of the Notice Not To Trespass and of the Police Report.

85.   A day or two later, in the county courthouse law library, just blocks from city hall and the library, Plaintiff quickly and easily found what the City, the Police, and the Library had failed even to look for--to wit, this Court's decision in Wayfield v. Tisbury, 925 F. Supp. 880, 888 (D. Mass. 1996), recognizing that "the ability to use a public library implicates important First Amendment rights," which cannot be taken away without due process of law.

86.   On March 10, 2006, Plaintiff petitioned the City, the Police, and the Library, that, in light of this Court's decision in Wayfield v. Tisbury, 925 F. Supp. 880 (D. Mass. 1996), the Notice Not To Trespass was and is unconstitutional on its face.

87.   On May 8, 2006, Plaintiff petitioned the City, the Police, the Library, and Director Coish to read but three words deep into the only law cited in the Notice Not To Trespass-- to wit, the Massachusetts criminal-trespass statute, G.L. c. 266, s. 120, the second and third words of which, "without right," expressly save constitutional rights in public buildings.

88.   The aforesaid are but two of Plaintiff's repeated petitions to the City, to the Police, and to the Library, in which:

(a) Plaintiff showed that, on its face, the Notice Not To Trespass violates the First and Fourteenth Amendments to the Constitution of the United States;

(b) Plaintiff reminded City, Police, and Library officials of their solemnly sworn

14

oaths to uphold that Constitution; and

(c) Plaintiff demanded that the Notice Not To Trespass be retracted and rescinded as unconstitutional.

89.    Plaintiff's repeated petitions have been answered only by repeated injuries:

90.    The City, the Police, and the Library have remained unmoved; and the Notice Not To Trespass has remained their final policy.

### Count I
### 42 U.S.C. § 1983
### Against the City, the Police, and the Library
### Deprivation of Constitutional Rights
### Compensatory Damages

91.    Plaintiff re-alleges paragraphs 1-90.

92.    The Notice Not To Trespass was and is the final policy of the City, of the Police, and of the Library with respect to the subject matter of the Notice Not To Trespass.

93.    The Police Report was and is the final policy of the City, of the Police, and of the Library with respect to the subject matter of the Police Report.

94.    In addition, the Notice Not To Trespass and the Police Report were, are, and were caused by policies, practices, customs, usages, and acts of the City, of the Police, and of the Library, under color of law, but without due process of law, and without constitutional guidelines, to:

(a) deprive a citizen of the constitutional right to be in the public library, or in some other public place, by official notice without judicial approval, and/or by police order without exigent circumstances, such as an emergency;

(b) write up an innocent citizen as a criminal suspect in a police report about "behaviors and actions" that broke no law;

15

(c) treat constitutional content like criminal conduct; and/or

(d) permit library personnel to disregard a library patron's constitutional rights to privacy of mind, freedom of thought, public-library access, and due process of law.

95.  Under color of state criminal law, but without due process of federal constitutional law, the City, the Police, and the Library committed, caused, condoned, ratified, authorized, and adopted the Police Report and the Notice Not To Trespass, and the policies, practices, customs, usages, and acts referred to therein, related thereto, and alleged herein.

96.  By all such means, or by any one of them, the City, the Police, and the Library deprived, or caused the deprivation of, Plaintiff's constitutional rights.

97.  Thus, the City, the Police, and the Library deprived, displaced, and degraded Plaintiff, and harmed him in his rights, in his mind, in his life, and in his time.

98.  Therefore, pursuant to 42 U.S.C. § 1983, the City, the Police, and the Library are each liable to Plaintiff in compensatory damages for such deprivation, displacement, degradation, and harm.

### Count II
### 42 U.S.C. § 1983
### Against Officer McGuire and Director Coish
### Deprivation of Clearly-Established Constitutional Rights
### Compensatory Damages

99.  Plaintiff re-alleges paragraphs 1-98.

100.  Under color of state criminal law, but without due process of federal constitutional law, Officer McGuire and Director Coish, officially, individually, and in concert, deprived, or caused the deprivation of, Plaintiff's constitutional rights, which were clearly established.

101.  Thus, Officer McGuire and Director Coish deprived, displaced, and degraded Plaintiff, and harmed him in his rights, in his mind, in his life, and in his time.

16

102.    Therefore, pursuant to 42 U.S.C. § 1983, Officer McGuire and Director Coish are officially, individually, and jointly liable to Plaintiff in compensatory damages for such deprivation, displacement, degradation, and harm.

**Count III**
**42 U.S.C. § 1983**
**Against Officer McGuire and Director Coish**
**Reprehensible Conduct in Deprivation of Constitutional Rights**
**Exemplary Damages**

103.    Plaintiff re-alleges paragraphs 1-102.

104.    Officer McGuire and Director Coish knew that Plaintiff broke no law; that Plaintiff's only "crime" was to speak up in defense of his own mind; that Plaintiff could not defend himself, but by words; and that Plaintiff needed the library for thinking and writing.

105.    Emboldened by Plaintiff's vulnerability, enraged by Plaintiff's complaints, which they were "unable to resolve," and unrestrained by their own oaths to uphold the Constitution of the United States, Officer McGuire and Director Coish willfully, wantonly, and deliberately violated Plaintiff's constitutional rights with reckless indifference, callous disregard, retaliatory intent, malicious motive, and gusto.

106.    Their Notice Not To Trespass reaches into every corner, of every crevice, of every city library wherein Plaintiff might seek out a quiet place to read, write, and think; makes it a crime for Plaintiff to be there; does so immediately, absolutely, unconditionally, without end, without due process, and without regard for Plaintiff's constitutional rights; suggests, without basis, that Plaintiff might try to enter the library under false pretenses; officially notifies Police of Plaintiff's criminal guilt--"[Plaintiff] will be in violation of [state criminal law]"-- in advance of trial, without court order; and threatens Plaintiff with false arrest--"you will be subject to arrest and prosecution"--in violation of constitutional rights.

17

107.   The Police Report shows Officer McGuire trying to make Plaintiff's constitutional

content look like criminal conduct; stigmatizing Plaintiff as a criminal suspect threatening to

the personal safety of others; bragging to his superiors about his decisive action to resolve

Plaintiff's complaints by ordering Plaintiff, forthwith, to keep out of all city libraries, forever;

thus, depriving Plaintiff's library-access rights; disregarding Plaintiff's due-process rights;

and retaliating for, and prior restraining, Plaintiff's exercise of First Amendment rights.

108.   Thereby, individually and in concert, Officer McGuire and Director Coish engaged

in reprehensible conduct that deprived Plaintiff of constitutional rights, causing him harm.

109.   Therefore, pursuant to 42 U.S.C. § 1983, this Court should order Officer McGuire

and Director Coish each to pay exemplary damages, in addition to compensatory damages.

**Count IV**
**42 U.S.C. § 1983**
**Against Officer McGuire and Director Coish**
**Conspiracy to Deprive Constitutional Rights**
**Compensatory and Exemplary Damages**

110.   Plaintiff re-alleges paragraphs 1-109.

111.   Acting officially, individually, and in concert, Officer McGuire and Director Coish

conspired ("met and agreed") to and did deprive Plaintiff of constitutional rights.

112.   Thus, Officer McGuire and Director Coish deprived, displaced, and degraded

Plaintiff, and harmed him in his rights, in his mind, in his life, and in his time.

113.   Therefore, pursuant to 42 U.S.C. § 1983, Officer McGuire and Director Coish are

officially, individually, and jointly liable to Plaintiff in compensatory damages for such

deprivation, displacement, degradation, and harm.

114.   In conceiving and consummating their conspiracy, Officer McGuire and Director

Coish deprived Plaintiff of his constitutional rights by means of reprehensible conduct.

115.  Therefore, pursuant to 42 U.S.C. § 1983, this Court should order Officer McGuire

and Director Coish each to pay exemplary damages, in addition to compensatory damages.

**Count V**
**42 U.S.C. § 1983**
**Against Officer McGuire, Director Coish, and Librarian Michaud**
**Conspiracy to Deprive Constitutional Rights**
**Compensatory and Exemplary Damages**

116.  Plaintiff re-alleges paragraphs 1-115.

117.  Librarian Michaud's "emergency" telephone call of February 25, 2006, to Officer

McGuire was not a good-faith request for police protection but a purposely calculated act to

accuse Plaintiff, falsely, to the Police, in order to: (a) retaliate against Plaintiff for having

exercised his First Amendment rights; and (b) deprive Plaintiff of his constitutional right to

public-library access, without due process of law.

118.  Librarian Michaud's "emergency" telephone call of February 25, 2006, to Officer

McGuire had the desired effect, as it precipitated both Officer McGuire's filing of the Police

Report on February 27, 2006, and Director Coish's execution and issuance of the Notice Not

To Trespass on February 28, 2006.

119.  Thus, Librarian Michaud's "emergency" telephone call of February 25, 2006, to

Officer McGuire provided Officer McGuire and Director Coish with the pretext they needed,

and used, to "legitimize" their deprivation of Plaintiff's constitutional rights, without due

process of law.

120.  Thus, together with Officer McGuire and Director Coish, Librarian Michaud

conspired to, and did, deprive Plaintiff of constitutional rights, under color of state criminal

law, but without due process of federal constitutional law.

121.  Thus, together with Officer McGuire and Director Coish, Librarian Michaud

19

deprived, displaced, and degraded Plaintiff, and harmed him in his rights, in his mind, in his life, and in his time.

122.    Therefore, pursuant to 42 U.S.C. § 1983, Officer McGuire, Director Coish, and Librarian Michaud are officially, individually, and jointly liable to Plaintiff in compensatory damages for such deprivation, displacement, degradation, and harm.

123.    In addition, pursuant to 42 U.S.C. § 1983, this Court should order Officer McGuire, Director Coish, and Librarian Michaud each to pay Plaintiff exemplary damages, because each of them, individually, and in concert with the others, engaged in reprehensible conduct that deprived Plaintiff of constitutional rights, thus causing him harm.

**Count VI**
**Massachusetts Civil Rights Act**
**Against Officer McGuire and Director Coish**
**Interference with Constitutional Rights**
**Compensatory Damages**

124.    Plaintiff re-alleges paragraphs 1-123.

125.    Individually and in concert, Officer McGuire and Director Coish attempted to and actually did interfere with Plaintiff's exercise and enjoyment of constitutional rights.

126.    Officer McGuire and Director Coish did so by threats, intimidation, or coercion.

127.    Such threats, intimidation, or coercion included, without limitation, retaliation for, and prior restraint of, Plaintiff's exercise of First Amendment rights.

128.    Such threats, intimidation, or coercion included, without limitation, those in the Notice Not To Trespass: "This letter…forwarded to the New Bedford Police Department, will serve as official notice…that if you should enter any of the aforesaid properties, you will be in violation of [state criminal law] and subject to arrest and prosecution."

129.    Such threats, intimidation, or coercion included, without limitation, Officer

20

McGuire's unconstitutional commands in the Police Report: "I [Officer McGuire] informed [Plaintiff] that he would not be allowed back in the library and all library branches. That a written order was in the process of being issued and I would hand deliver[] it to him."

130.    Individually and in concert, Officer McGuire's and Director Coish's attempted and actual interference with Plaintiff's exercise and enjoyment of constitutional rights--by threats, intimidation, or coercion--deprived, displaced, and degraded Plaintiff, and harmed him in his rights, in his mind, in his life, and in his time.

131.    Therefore, pursuant to the Massachusetts Civil Rights Act, G. L. c. 12 §§ 11H, 11I, Officer McGuire and Director Coish are individually and jointly liable to Plaintiff, in compensatory damages, for such deprivation, displacement, degradation, and harm.

### Count VII
### Massachusetts Civil Rights Act
### Against Librarian Michaud
### Interference with Constitutional Rights
### Compensatory Damages

132.    Plaintiff re-alleges paragraphs 1-131.

133.    Librarian Michaud attempted to and actually did interfere with Plaintiff's exercise and enjoyment of constitutional rights.

134.    Librarian Michaud did so by threats, intimidation, or coercion.

135.    Such threats, intimidation, or coercion included, without limitation, Michaud's retaliation for, and prior restraint of, Plaintiff's exercise of First Amendment rights.

136.    Such threats, intimidation, or coercion included, without limitation, Librarian Michaud's February 25, 2006, oral threat to retaliate against Plaintiff because of:

(a) Plaintiff's February 24, 2006, petition to City Hall for redress of grievances ("letter"), in which Plaintiff complained that Michaud had interfered with his exercise of

First Amendment rights to receive and transmit written information and ideas; and

(b) Plaintiff's brief self-defensive word-choice ("language"), directed not at Michaud but away from a man who suddenly took Plaintiff by surprise, from behind, while Plaintiff was seated at a computer, thinking and writing.

137.    Such threats, intimidation, or coercion included, without limitation, Librarian Michaud's February 25, 2006, oral threat to deprive Plaintiff of his constitutional rights to read, write, and think freely in the public library; and to do so without due process of law.

138.    Such threats, intimidation, or coercion included, without limitation, Librarian Michaud's carrying out her retaliatory threats by calling Officer McGuire on February 25, 2006, and falsely accusing Plaintiff of belligerent behavior threatening to her personal safety.

139.    Such threats, intimidation, or coercion also included, without limitation, Librarian Michaud's act of coming over to Plaintiff in the library and slapping the computer mouse next to him on February 27, 2006--just two days after her February 25, 2006, phone call to Officer McGuire, in which Michaud claimed to feel personally threatened by Plaintiff.

140.    Librarian Michaud's attempted and actual interference with Plaintiff's constitutional rights--by threats, intimidation, or coercion--deprived, displaced, and degraded Plaintiff, and harmed him in his rights, in his mind, in his life, and in his time.

141.    Therefore, pursuant to the Massachusetts Civil Rights Act, G. L. c. 12 §§ 11H, 11I, Librarian Michaud is individually liable to Plaintiff in compensatory damages for such deprivation, displacement, degradation, and harm.

WHEREFORE Plaintiff demands judgment against each Defendant for compensatory damages in the amount of $300,000, plus interest, costs, and an attorney-fee award; exemplary damages in the amount of $600,000, each, against Defendants Shawn P. McGuire, Theresa Coish, and Eileen Michaud; a declaration that the Notice Not To Trespass is unconstitutional; preliminary and permanent injunctions enjoining Defendants from enforcing the Notice Not To Trespass, and from otherwise interfering with Plaintiff's constitutional rights to be in, to use, to read, to write, and to think freely in any and all branches and bookmobiles of the New Bedford Free Public Library, when open to the public, *except* by due process of law; together with such other and further equitable relief as the Court deems appropriate.

Plaintiff demands trial by jury.

DATED this 5th day of February, 2009.

*Thomas J. Dolan*, pro se

THOMAS J. DOLAN, pro se
Plaintiff
800 Pleasant Street
New Bedford, Massachusetts 02740
Phone: (508) 971-3734
Email: tomdolan@hotmail.com

23